**Eric SMITH, Plaintiff,**

v.

**NATIONAL CREDIT SYSTEMS, INC., Defendant.**

**Case No. CV–10–1026–TL.**

United States District Court, D. Arizona.

July 18, 2011.

Marshall Scott Meyers, Weisberg & Meyers LLC, Phoenix, AZ, for Plaintiff.

Joseph J. Lico, Adam L. Plotkin PC, Denver, CO, Patricio Esquivel, Jerold Kaplan Law Office, Phoenix, AZ, for Defendant.

## ORDER

TIM LEONARD, District Judge.

On May 11, 2010, plaintiff filed this action seeking damages for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. The original complaint alleged defendant violated the Act by threatening to take action it did not intend to take and by falsely representing the character, amount, or legal status of the alleged debt. On January 11, 2011, plaintiff filed an amended complaint, which added allegations that defendant also violated the Act by, among other things, falsely stating that it had reported his debt to the three credit bureaus when it had not done so and by overshadowing plaintiffs 30–day validation rights.

■ This matter is before the court on plaintiff's motion for summary judgment.[1] Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2) (emphasis added). *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sig-

---

1. Plaintiff's request for oral argument is denied.

nificantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The undisputed facts establish that plaintiff is a consumer who allegedly owes a debt within the meaning of the Act, and defendant is debt collector as defined by the Act. On January 25, 2010, defendant contacted plaintiff by telephone regarding the debt. Defendant's notes of the phone conversation reflect that plaintiff orally disputed the debt during this first call; defendant's employee, however, did not mark the file as disputed. The next day, defendant mailed a letter to plaintiff in attempt to collect the outstanding debt. Defendant's initial correspondence stated:

> The above referenced account has been placed with this office for collection. National Credit Systems, Inc. has been authorized to recover this debt by way of credit bureau reporting (following this initial 30 day validation period) as well as other remedies available under the law. It is our intention to pursue this debt until resolved.

> However, if you contact our office, we will work with you to satisfy this debt in a friendly manner. Your representative will review and explain all charges assessed, consider your individual circumstances, and assist you in resolving this matter. Please be assured that you may still avoid the aforementioned consequences.

Exhibit 1 to Plaintiff's First Amended Complaint (Doc. No. 25–1) [hereinafter cited as "Amended Complaint"]. The letter also contained the required statutory notice that "[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." *Id.* Based on plaintiff's oral dispute of the debt, defendant sent plaintiff a second letter, dated January 27, 2010, which stated:

> We have received your correspondence concerning the above referenced account.

> Your dispute has been investigated; however, we have yet to find sufficient evidence to validate your claim(s). It is very important that you provide our company with all documentation supporting your position.

> \*      \*      \*

> Be advised that National Credit Systems, Inc. is a third party debt collection agency whose efforts are solely on behalf of other companies who have previously validated debts.

Exhibit 4 to Amended Complaint (Doc. No. 25–4). Thirty-three days later, defendant sent a third letter to plaintiff. This letter informed plaintiff:

> Be advised, we are processing this account for placement on your credit history with all three national credit bureaus. If reported, your ability to obtain credit, rent, or secure favorable interest rates may be affected for seven years from the date of delinquency.... We urge you to contact our office before this debt is placed on your credit record or reviewed for possible legal action.

Exhibit B to Plaintiff's Separate Statement of Facts (Doc. No. 34–2) ("March 1, 2010 letter").

On April 8, 2010, defendant sent an additional correspondence to plaintiff. This letter, which is referred to as a 3.0 letter, stated that:

> Your refusal to make suitable arrangements to satisfy the above referenced debt has resulted in your account being reviewed for additional recovery options available to our client in your state.
>
> Our Company *has already reported* this account to all three national credit bureaus, which is likely affecting your ability to obtain credit, rent, or secure favorable interest rates.

Exhibit 2 to Amended Complaint (Doc. No. 25–2) (emphasis added). Although the letter stated that defendant had already reported the debt to the three national credit bureaus, defendant did not in fact report the debt until four days later. In addition, although plaintiff orally disputed the debt during his first conversation with defendant, defendant did not report the debt as disputed until April 25, 2010.

Pursuant to defendant's policy, it does not report a debt to the credit bureaus until 65 days after it receives the debt for collection, and a 3.0 letter cannot be generated until the 65 days have elapsed. Defendant reports debts to the credit bureaus on the 7th and the 21st of each month through a batch process using an automated system. Defendant's Vice President of Operations, Ronald V. Sapp, is responsible for initiating the credit-reporting process. To do so, he uses a computer program to pull debtor information, which then creates a credit bureau submission report file. Once the files are created, Sapp pushes a button that causes the files to be uploaded to the credit bureaus. The 3.0 letter, which informs a debtor that his debt has been reported to the credit bureaus, is automatically generated once the credit bureau process has been established regardless of whether the reporting actually occurs. Affidavit of Ronald V. Sapp at ¶ 28 (Doc. No. 39–1); Deposition of Ronald Sapp at 242 (Doc. No. 34–1). Defendant does not review its collection notes before reporting debts to the credit bureaus. Deposition of Ronald Sapp at 169.

When Sapp attempted to run the reports that would have included plaintiff's debt, a computer error occurred which created empty files; this prevented defendant from uploading any information to the credit bureaus. Thus, when the 3.0 letter was sent to plaintiff telling him that his debt had already been reported to the credit bureaus, it had not. In addition, defendant did not report the debt as disputed, even though plaintiff had orally disputed the debt and defendant's collection notes reflected this.

■■■ The Fair Debt Collection Practices Act prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Act is a strict liability statute; violations of the Act do not need to be intentional to be actionable. *See Reichert v. Nat'l Credit Sys., Inc.,* 531 F.3d 1002, 1004 (9th Cir. 2008). Moreover, even a single violation of the act is sufficient to support liability. *See Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1238 (5th Cir. 1997). The Act, however, "provides a 'narrow exception to strict liability' ". *Reichert,* 531 F.3d at 1005 (*quoting Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1177 (9th Cir.2006)).

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15 U.S.C. § 1692k(c). The Court of Appeals for the Ninth Circuit has cautioned that:

> To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors.... If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error.

*Reichert,* 531 F.3d at 1007.

Plaintiff contends defendant violated § 1692e of the Act in three distinct ways. First, he argues that defendant's January 26, 2010 letter, combined with the March 1, 2010 letter, falsely represented that credit reporting was imminent when—under defendant's policies—such reporting could not occur until 65 days after defendant received the account for collection, which was March 28, 2010. Plaintiff claims this constitutes a violation of § 1692e(5), which forbids threatening "to take any action that cannot legally be taken or that is not intended to be taken."[2] Second, plaintiff argues defendant violated § 1692e(10)[3] by falsely representing in the 3.0 letter that it had reported his debt to the credit bureaus when it in fact had not done so. Finally, plaintiff claims defendant violated § 1692e(8)[4] by failing to disclose, when it reported to the credit bureaus, that the debt was disputed. In addition to the alleged violations of § 1692e, plaintiff asserts defendant violated § 1692g, which provides that "[a]ny collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). Plaintiff argues defendant's January 27, 2010 letter to him "overshadowed the mandatory notices by demanding that Plaintiff 'provide [Defendant] with all documentation supporting [his] position' disputing the debt, and by stating that '[Defendant] ha[s] yet to find sufficient evidence to validate [Plaintiff's claim(s).'" Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law at 16 (Doc. No. 33).

■ As a single violation of the statute is sufficient to establish liability, the court finds it need not address plaintiff's 1692e(5) and 1692g arguments as it is clear that defendant's conduct violated 1692e(8) and 1692e(10). Section 1692e(8) clearly provides that a debt collector must communicate that a debt is disputed if it knows or should have known of the dispute. Defendant admits that "Plaintiff disputed the debt with Defendant on the first call." Defendant's Separate Statement of Facts at ¶ 5 (Doc. No. 39). The law is clear that "[o]ral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute." *Camacho v. Bridgeport Fin. Inc.,* 430 F.3d 1078, 1082 (9th Cir.2005). Defendant,

---

**2.** 15 U.S.C. § 1692e(5).

**3.** Section 1692e(10) provides that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" constitutes a violation of the Act.

**4.** Section 1692e(8) provides that "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" violates the Act.

however, concedes that it did not communicate that fact to the credit bureaus when it reported the debt on April 12, 2010. Likewise, defendant falsely represented to plaintiff that it had reported his debt to the credit bureaus before issuing the April 8, 2010 letter, when in reality it did not report until April 12. Defendant's argument that the 3.0 letter "cannot be interpreted as being used for the collection of any debt as required under § 1692e"[5] is belied by the language of the letter itself. The letter warned plaintiff that further collection efforts would follow "[i]f voluntary payment of this account is not made". Exhibit 2 to Amended Complaint. Likewise, the letter cautioned plaintiff, "[t]o avoid further costly collection activity, it is imperative you contact me immediately." *Id.* That this letter, and the reporting to credit bureaus, is used "in connection with the collection of any debt"[6] is admitted by defendant's Vice President of Operations, who testified:

> Q. So when you decide to stop working the account with man-hours and you leave it on the credit report, you do that to hopefully get the debtor to pay the debt?
>
> A. Yeah. Many times the consumer will pay the debt if they're wanting to rectify something on their credit report.... One of the by-products of putting it on there is that many times a consumer will pay the debt.
>
>    *  *  *
>
> Q. We are looking at Exhibit 2 to the amended complaint. It is a letter dated April 8th, and this is letter 3.0?
>
> A. Correct.
>
> Q. What is the purpose of this form letter?
>
> A. What is the purpose? To help collect the debt.

Deposition of Ronald Sapp at 66–67, 195.

▮ Notwithstanding these violations of the Act, defendant argues it is not liable because both violations were the result of bona fide errors.[7] With respect to its failure to report the debt as disputed, defendant points to its policies and procedures for training collectors on the requirements of the Act and for marking accounts disputed. It contends that "[a]n employee oversight caused the debt not to be flagged as disputed." Affidavit of Ronald V. Sapp at ¶ 54. The violation at issue here, however, is not the failure to flag plaintiff's debt as disputed; the violation is the failure to inform the credit bureaus of the disputed nature of the debt when defendant reported it. Defendant concedes that the disputed nature of the debt was obvious from an examination of the collection notes. Deposition of Ronald Sapp at 167, 192–93. Defendant, however, does not review collection notes before reporting debts to the credit bureaus, *id.* at 169, even though such a review would have avoided the erroneous report in this case. Defendant has not identified any procedure to ensure that it does not erroneously report a disputed debt as undisputed. Thus, it has not met its burden of establishing the bona fide error defense with respect to the § 1692e(8) violation.

---

**5.** Defendant's Combined Response to Plaintiffs Motion for Summary Judgment and Supporting Memorandum of Law at 12 (Doc. No. 38) [hereinafter cited as "Defendant's Response]."

**6.** 15 U.S.C. § 1692e.

**7.** Defendant asserts that "Plaintiff can provide no evidence that Defendant intended to violate the FDCPA or that any violation was not a bona fide error." Defendant's Response at 14. Plaintiff, however, does not have the burden of proof on this issue; that burden clearly lies with defendant. *See* 15 U.S.C. § 1692k(c).

■ Likewise, the court finds defendant has not met its burden with respect to the § 1692e(10) violation. At the time it issued the 3.0 letter to plaintiff, the only measure defendant had in place to ensure that credit reporting actually occurred before the letter was sent was that a field in the debtor's file be populated with a note stating that the credit reporting had occurred. Deposition of Ronald Sapp at 219. That note, however, is actually made *before* the credit reporting occurs, *id.* at 202, and defendant pointed to no procedure to ensure that the 3.0 letter did not issue before the debt was reported.[8]

■ As the court has found defendant violated the Act, the court must determine the amount of damages to award plaintiff. The Act provides that

any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000[.]

15 U.S.C. § 1692k(a). Plaintiff is not seeking actual damages, so the only issue is the amount of statutory damages to award.[9] In making this determination, the statute instructs the court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional". 15 U.S.C. § 1692k(b)(1). There is no evidence in the record as to the frequency and persistence of defendant's noncompliance, nor is there any indication that defendant's violations of the Act in this case were intentional. While defendant's failure to report the debt as disputed when it initially reported to the credit bureaus is egregious, that failure was rectified in less than two weeks. The court therefore finds that full statutory damages are not warranted in this matter. The court thus awards plaintiff $500.00 in statutory damages. Plaintiff shall file his motion for attorney's fees and costs in accordance with LRCiv 54.2.

In sum, the court GRANTS Plaintiff's Motion for Summary Judgment (Doc. No. 33). Plaintiff is awarded statutory damages in the amount of $500.00. Judgment in that amount will issue accordingly.

---

8. Defendant has since changed the date for issuing 3.0 letters so that if similar computer problems occur in the future there will be time to correct them before generating the 3.0 letter. Affidavit of Ronald V. Sapp at ¶ 26.

9. Proof of actual damages is not required to collect statutory damages. *See Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 780 (9th Cir.1982).